Gaston, Judge.
 

 The object of
 
 this hill is to
 
 compel
 
 the
 
 defendant to pay over to the plaintiff a sum of money, which the defendant, as executor of Jonathan Dew, deceased, collected from Frederick Pitman, upon a bond executed by the said Pitman to the said Dew, and the beneficial interest whereof is alleged to have been transferred to the plaintiff by the obligee, in his lifetime. . The plaintiff charges that Jonathan Dew died in July, 1836, having previously executed his last will and testament, whereof he- appointed the defendant executor; that the deceased, for many months before
 
 *131
 
 his death, was so severely afflicted with rheumatism as to be confined constantly to his chamber, and generally to his bed; that he had no white person dwelling with him, and stood in need of better nursing and more assiduous attentions than he could expect from his slaves; and that the plaintiff, who had, some seven or eight years before, borne an illegitimate child to the said Jonathan, was induced, at his earnest request, and while he was in this destitute and afflicted estate, to take up her abode in his house;'that during this period, she nursed him with the utmost fidelity, and took upon herself the charge of his household concerns; and that sometime in the month of March or April preceding- his death, and while she was thus residing with him, the said Jonathan, “ expressing his belief that he would not live long,” and “ in consequence of her faithful services in attending to him and his affairs, during his illness,” and “ in fulfilment oí the promises and assurances which he had repeatedly made, to make some compensation to her, because of past co-habitation,”, gave to the plaintiff the sum of two hundred dollars in money, and the note in question, which is described as bearing date the 27th of August, 1835, for the sum of $450, payable with interest from the date. The plaintiff avers that the provision for her was thus made, because, when he intimated an intention to provide for her by will, she had expressed her wish that whatever bounty he might be disposed to bestow, should be put directly into her possession; and states her be-, lief to be, that he omitted to endorse the bond, either because he was ignorant that an indorsement was necessary to transfer the legal interest therein, or his excruciating pains made him forget to do so. The bill then states, that after the death of the said Dew, the defendant, who had proved his will, having learned that the plaintiff held the said bond, demanded the same from her, and this demand being refused, charged her with having stolen the money and bond aforesaid, and caused her to be apprehended and bound in recognizance to answer said charge; that he had afterwards abandoned the prosecution, but had prevailed on Pitman to pay him the amount of the bond, on his executing a discharge therefor amf an indemnity against the plaintiff’s demand.
 

 
 *132
 
 The defendant’s answer admits the death of Dew, and the probate of his will, and the receipt of the money upon the bond by the defendant, as said Dew’s executor. He admits that the plaintiff was the mother of an illegitimate child, of which said Dew was reputed to be the father; and, while he denies the services' rendered to him by the plaintiff, admits that she made his house her abode during his long illness. He states that he had been in the habit of free communication with his testator up to his death, in relation to his pecuniary affairs, and from the knowledge thereby acquired, asserts his entire conviction that he never intended to give, and never did give, to her the bond in question; declares his belief that she took the same dishonestly; says that, under the influence of this belief, he instituted the prosecution against her, and that he desisted therefrom, not from any doubts he himself entertained of her guilt, but because the Officer of the State was of opinion that the evidence was insufficient to warrant a conviction for felony.
 

 To this answer there is a general replication; and the cause is brought to a hearing upon the proofs.
 

 Although there are some expressions attributed to the testator, at the time of the alleged gift, tending to shew that it was made in contemplation of death, yet we must understand the plaintiff as setting up in her bill an irrevocable gift, taking effect immediately, and wholly independent of the contingency, whether the donor should or should not recover from his then illness; or whether the donee should or should not survive the'donor. Indeed, it is not easy to conceive how a donation
 
 mortis causa
 
 could be established by any proof in a case like this, where the testator was not surprized by sickness, but lived for months afterwards, and had abundant opportunity to make his testamentary dispositions in the regular and ordinary way. An absolute and immediate gift is not, indeed, so unsusceptible of proof; but it cannot be established,, unless the evidence be full and satisfactory. In vain has the law.prescribed solemn forms, and anxiously provided other safe-guards, to prevent a testamentary disposition from being fraudulently set up, after the death of the supposed donor, if, upon slender, vague, doubtful evidence of an
 
 *133
 
 absolute donation on the bed of sickness, those who have the custody of the dying man and his effects, may establish the ownership thereof in themselves, as soon as the breath is out of his body. It is impossible that such a gift as is here alleged, should not be regarded with strong suspicion; and property would be utterly unsafe, were it to be sustained on proof that did not produce full conviction. Certainly there is no such proof. There is no direct testimony to the
 
 act
 
 of giving. No witness pretends to have been present at such an act. No one speaks eyen of having heard the testator speak of such an act. The nearest approach to such testimony is to be found in the deposition of the plaintiff’s sister, Louisa Shirley. She states that, as much as two or three months before Dew’s death, she was with the plaintiff, in the room where the sick man lay, and there heard the plaintiff say that he had given her two hundred dollars and Pitman’s bond; and she states further, that he was awake, and she
 
 supposes
 
 he was within hearing of what was said. When, where, in what manner this gift was made — whether it was absolute, or upon the contingency of death, is not stated. Not a word is uttered by the sick man. Nothing is said in regard to the state oí his bodily sufferings, or of his mental capacity, at the time. And the witness only
 
 supposes
 
 that he may have heard her sister’s remarks. We cannot hesitate a moment in declaring that this testimony furnishes no evidence of the alleged gift. The other depositions for the plaintiff, if they prove any thing, shew only that before Dew’s death, she had the bond in her hands, and pretended it was given to her. We say, if they prove any thing — because they are the depositions of persons whose claims to credit are very questionable.
 

 Per. Curiam. Bill dismissed.